[No. A084901. First Dist., Div. Two. Oct. 28, 1999.]

DAVID J. ORANEN, Plaintiff and Appellant, v.
STATE BOARD OF CHIROPRACTIC EXAMINERS, Defendant and
Respondent.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinions is certified for publication with the exception of parts III. B and C.

## COUNSEL

Law Offices of James Jay Seltzer, James Jay Seltzer and Timothy Murphy for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Ronald F. Russo, Chief Assistant Attorney General, Arthur D. Taggart and Jana L. Tuton, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

## HAERLE, J.—

### I. INTRODUCTION

This is an appeal from a judgment of the San Francisco Superior Court denying a petition for a writ of mandate seeking to overturn an order of the respondent State Board of Chiropractic Examiners (Board) revoking appellant's license as a chiropractor. We affirm.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Appellant was a practicing chiropractor in Sacramento. He began his practice in May 1989 under the name Madison Avenue Chiropractic. In

approximately September 1994 he associated his practice at that location with a medical doctor, one Razia Y. Forte, M.D. For several months thereafter, he was professionally associated with Dr. Forte and a professional corporation owned by her.

On May 7, 1997, appellant pled guilty to violations of Penal Code sections 550, subdivision (a)(6) (insurance fraud relating to health benefits) and 484 (petty theft) and, simultaneously, no contest to a violation of Penal Code section 550, subdivision (b)(1) (insurance fraud). As part of the plea agreement, he agreed to pay some $150,000 in restitution to 15 different insurance companies. He also specifically admitted, via the plea agreement (1) the submission, during the period of January 1994 to January 1995, of duplicate claims for treatment of the same United States Postal Service employee, (2) the making of false and fraudulent representations to the United States Postal Service and the United States Department of Labor to defraud those agencies during the same period, and (3) the submission, during the period September 1994 through March 1995 of billings for treatments allegedly, but not actually, provided by Dr. Forte.

On August 19, 1996, the Board filed an accusation against appellant. On July 8, 1997, subsequent to his plea and conviction, it filed a "First Amended Accusation." It charged appellant with conviction of crimes substantially related to the functions, qualifications, and duties of a chiropractor in violation of Business and Professions Code section 1000-10 and California Code of Regulations, title 16, section 317, subdivision (g).

On September 11, 1997, an administrative hearing began on the amended accusation in Sacramento before an administrative law judge (ALJ). The Board initially introduced only the court records of appellant's plea agreement and conviction. It then rested, reserving the right to call appellant as a witness should he not testify in the course of his defense case.

Appellant requested and was granted a continuance until October 27, 1997. In the interim, the Board issued a "Second Amended Accusation," adding a claim for costs pursuant to California Code of Regulations, title 16, section 317.5. At the beginning of the resumed hearing, the ALJ allowed its filing by the Board, albeit over appellant's objection.

The hearing recommenced as scheduled on October 27, 1997, and concluded two days later. During those two days, appellant and several other witnesses testified in his defense, and were cross-examined by counsel for the Board. We will discuss some of the specifics of that testimony below, but in general it consisted of (1) testimony by appellant concerning his

acceptance of responsibility for past billing errors, (2) his explanation of how he was currently handling billing issues, (3) one character witness, (4) two other witnesses testifying as to appellant's past and current billing practices, and (5) a Southern California attorney who testified as to legal advice he gave appellant (after his criminal problems surfaced) about interactions with a medical doctor.

The Board presented one rebuttal witness who questioned appellant's current billing practices as regards, especially, insurance claims.

On November 10, 1997, the ALJ assigned to the case issued a proposed decision recommending revocation of appellant's chiropractor's license. The following month, the full Board adopted the decision, to become effective January 7, 1998.

One day before that date, appellant filed a petition for a writ of mandate and an application for a stay order in San Francisco Superior Court. The court granted the stay.[1] However, after a hearing on August 28, 1998, the court denied the petition and dissolved the stay order on September 15, 1998. Appellant filed a timely notice of appeal.

## III. DISCUSSION

Appellant presents three issues by his briefs. First, he urges that the Board lacked the authority to order him to pay its costs in connection with the revocation hearing. Second, he contends that the ALJ improperly allowed the Board to amend its accusation to include the cost recovery request. Third, he argues that the ALJ improperly excluded certain evidence relevant to mitigation and rehabilitation. We reject all of these contentions.

### A. *The Legality of the Board's Cost-reimbursement Regulation*

The ALJ's decision, later adopted by the full Board, requires appellant to pay the Board the sum of $7,844 by way of costs related to the reimbursement hearing. The basis for this order was California Code of Regulations, title 16, section 317.5, which provides in relevant part: "In any order in resolution of a disciplinary proceeding before the Board of Chiropractic Examiners, the board may request the administrative law judge to direct a licentiate found to have committed a violation or violations of the Chiropractic Initiative Act to pay a sum not to exceed the reasonable costs of the

---

[1]The stay order is not included in the record provided us, but both parties agree such was issued by the superior court.

investigation and enforcement of the case." (Cal. Code Regs., tit. 16, § 317.5, subd. (a).) Appellant contends, however, that this regulation, adopted by the Board in 1996, is unauthorized by any statute or constitutional provision.

It so happens that the Board is one of the few such licensing and disciplinary boards *not* within the State Department of Consumer Affairs. (See Bus. & Prof. Code, § 101.) This is so, apparently, because the Board was not created by the Legislature but, rather, by an initiative act passed by the voters on November 7, 1922; the act took effect December 1, 1922. (See Historical and Statutory Notes, 3A West's Ann. Bus. & Prof. Code (1990 ed.) foll. § 1000-1, p. 207.) The Legislature's power to amend acts adopted by the initiative process is, of course, limited. (See Cal. Const., art. II, § 10.)[2]

Appellant contends that the only statutory basis that could possibly justify the regulation relied upon by the ALJ is Business and Professions Code section 125.3, adopted in 1992, which authorizes a cost-reimbursement provision "in any order issued in resolution of a disciplinary proceeding before any board within the department [of Consumer Affairs] or before the Osteopathic Medical Board . . . ." (Bus. & Prof. Code, § 125.3, subd. (a).) Noting that this Board falls within neither category, appellant concludes there is no statutory basis for the regulation it challenges.

We disagree. We agree, rather, with the Attorney General, who points out that there are not one but two provisions in the 1922 act that broadly authorize the Board to adopt regulations implementing the statute. Thus, section 4 of the act (Bus. & Prof. Code, § 1000-4) provides: "The board shall have power: [¶] . . . [¶] (b) To adopt from time to time such rules and regulations as the board may deem proper and necessary for the performance of its work, the effective enforcement and administration of this act, the establishment of educational requirements for license renewal, and the protection of the public. . . ." (Bus. & Prof. Code, § 1000-4, subd. (b).)

The second relevant provision is section 1000-10, subdivision (a) of the same act; it provides: "The board may by rule or regulation adopt, amend or repeal rules of professional conduct appropriate to the establishment and maintenance of a high standard of professional service and the protection of the public. . . ."

We think the Board's cost-reimbursement regulation is clearly authorized by either, and certainly by both, of these statutory provisions. Given our

---

[2]Nonetheless, the act has been amended several times, specifically in 1972, 1976 and 1988. (See Historical and Statutory Notes, 3A West's Ann. Bus. & Prof. Code, *supra*, foll. §§ 1000-1 and 1000-10, pp. 207 and 226-227.)

deferential standard of review of such administrative agency rules and regulations (see generally, 9 Witkin, Cal. Procedure (1999 supp.) Administrative Proceedings, § 116 and cases cited therein), we cannot and do not agree with appellant that the challenged regulation is invalid.

In any event, the general cost-reimbursement statute (Bus. & Prof. Code, § 125.3) applicable to most if not all other professional disciplinary boards[3] clearly indicates the Legislature's general support for this sort of remedial provision. Indeed, the 1992 enactment of that statute by the Legislature was undoubtedly the impetus for the Board's adoption of its parallel regulation four years later.

B., C.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## IV.  DISPOSITION

The judgment is affirmed.

Kline, P. J., and Ruvolo, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 19, 2000.

---

[3]As noted before, because the statute setting up the Board was passed via the initiative process, the Legislature is restricted in how and to what effect it may amend the act. (See Cal. Const., art. II, § 10.)

*See footnote, *ante*, page 258.